**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| JESSE HARROD, | No. 08-56203 |
| Petitioner - Appellant, | D.C. No. 2:03-cv-06598-CJC-PJW |
| v. | |
| A. K. SCRIBNER, Warden, | MEMORANDUM[*] |
| Respondent - Appellee. | |

Appeal from the United States District Court
for the Central District of California
Cormac J. Carney, District Judge, Presiding

Argued and Submitted April 7, 2010
Pasadena, California

Before: PREGERSON, BEEZER and THOMPSON, Circuit Judges.

Jesse Harrod brings a petition for a writ of habeas corpus following his

conviction in California state court for first degree murder. The parties are familiar

with the facts of this case, which we repeat here only to the extent necessary to

explain our decision. We have jurisdiction under 28 U.S.C. § 2253. We review

_____

[*]    This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

the district court's decision to deny a writ of habeas corpus de novo, *Pinholster v. Ayers*, 590 F.3d 651, 662 (9th Cir. 2009) (en banc), and affirm.

## I.     Batson Issues

We review de novo to determine whether a prosecutor's reason for dismissing a juror is race-neutral. *Williams v. Rhoades*, 354F.3d 1101, 1107 (9th Cir. 2004). The determination whether the prosecutor acted with discriminatory intent is reviewed for clear error. *Id.* at 1109.

In determining the racial neutrality of a proffered reason for dismissing a juror, we must conduct a comparative analysis of jurors who were dismissed and those who were not dismissed. *Kesser v. Cambra*, 465 F.3d 351, 360-61 (9th Cir. 2006). Generally, the proffer of a pretextual explanation gives rise to an inference of discriminatory intent. *See Snyder v. Louisiana*, 552 U.S. 472, 485 (2008). Here, the prosecutor's explanation that he struck juror 5 because the juror was a postal employee was pretextual because the prosecutor did not strike another juror who was also a postal employee. However, both juror 5 and the other postal-employee juror were of the same race. We therefore cannot infer that race played a role in juror 5's dismissal.

Though the issue is close, the prosecutor's statements about music were facially neutral, and did not rise to the level of "blatant racist and cultural

2

stereotypes" discussed in *Kesser*. *See, e.g. Kesser*, 465 F.3d at 357. Our comparative analysis of the proffered explanation's persuasive effect is complicated by the severe limitations of the record before us. On such a limited record, we cannot conclude that juror 5's interest in music or disrespectful demeanor in court were mere pretexts for his dismissal.

The prosecutor dismissed juror 11 because she seemed "dissatisfied" and "above it all." A prosecutor may legitimately dismiss a juror for "poor attitude." *United States v. Thompson*, 827 F.2d 1254, 1260 (9th Cir. 1987). We presume that the state court's credibility determination is correct. *Rhoades*, 354 F.3d at 1106. Once again, comparative analysis of the sparse record in this case does not suggest that other dissatisfied-looking jurors were left on the panel, or that the dismissal was racially motivated.

II.    Juror Misconduct

We review a district court's decision whether to order a new trial due to juror misconduct for abuse of discretion, *United States v. Mills*, 280 F.3d 915, 921 (9th Cir. 2002), and its factual findings for clear error. *United States v. Long*, 301 F.3d 1095, 1101 (9th Cir. 2002), *cert. denied*, 537 U.S. 1216 (2003). Harrod's allegations of juror misconduct have no merit. Saunders never claimed that she had never met Harrod, but rather stated that she had no recollection of him. Harrod

3

had gained eighty-six pounds, and testified that he did not recognize Saunders at trial either. The evidence does not establish that Saunders lied to remain on the jury.

Accordingly, the district court's decision is AFFIRMED and the petition is DENIED.